**RICHMOND WELFARE RIGHTS ORGANIZATION et al., Plaintiffs-Appellees,**

v.

**Woodrow W. SNODGRASS et al., Defendants-Appellants.**

**Nos. 73–2778, 73–2935.**

United States Court of Appeals, Ninth Circuit.

Oct. 15, 1975.

Rehearing Denied Nov. 14, 1975.

---

Arthur W. Walenta, Jr. (argued), of Contra Costa County, Martinez, Cal., for defendants-appellants.

William Bennett Turner (argued), of NAACP Legal Defense and Educational Fund, Inc., San Francisco, Cal., for plaintiffs-appellees.

## OPINION

Before BROWNING and DUNIWAY, Circuit Judges, and MARKEY,* United States Court of Customs and Patent Appeals.

MARKEY, Chief Judge, United States Court of Customs and Patent Appeals:

These consolidated appeals concern the National School Lunch Act, 42 U.S.C. § 1751 et seq. (Act). We reverse that portion of the district court's partial summary judgment which held that a school district participating in a federal subsidy program under the Act must supply a free or reduced price lunch (free lunch) to each eligible child within the district and we affirm, though on different grounds, that portion which denied plaintiffs' petition for an order prohibiting defendants from terminating participation under the Act and requiring expanded participation. We enjoin termination of defendants' present lunch program until final determination of plaintiffs' claim under the Fourteenth Amendment.

Defendant Richmond Unified School District (District) had for a number of years administered a school lunch program under the Act in all twelve of its secondary schools. In expanding to elementary schools, the District incorporated only six of its forty-nine elementary schools in the program. All children attending those six schools received free lunches without regard to their eligibility under the Act. Those six schools had the highest concentration of students qualifying under the Act and were predominantly attended by black students. No student attending any of the forty-three non-incorporated schools, though a number were qualified, received a free lunch. The District serves only one out of five of its eligible children. It denies any responsibility whatever, even while participating under the Act, to serve the other four at any time, now or in the future. Some of the qualified students attending the non-incorporated schools had siblings attending an incorporated school. The City of Richmond Model Cities Agency paid the District's entire share of the cost of kitchen equipment, 100% of the cost of the kitchen building and other unsubsidized items and a substantial portion of the cost of the lunches served in the six incorporated elementary schools.

### Proceedings

Plaintiffs filed this class action on behalf of all eligible children within the District who were aggrieved by the partial free lunch program, basing jurisdiction on 28 U.S.C. §§ 1331, 1337 and 1343(3), and seeking declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. The second, and last, amended complaint set forth seven claims: (1) Defendants' failure to provide a free lunch to each eligible child in the District constituted a violation of the Act; (2) Defendants' provision of lunches in its secondary schools violated the Act's requirement that free lunches be provided first to the neediest children; (3) Defendants' provision of lunches to some children but not to their siblings violated federal regulations (7 C.F.R. § 245.3(a)) implementing the Act; (4) and (5) Defendants violated the Fourteenth Amendment by the provision of free lunches in segregated schools and not in desegregated schools; (6) Defendants violated federal regulations (7 C.F.R. § 245.6(b)) in denying free lunches to eligible children transferring from an incorporated to a non-incorporated school; and (7) Defendants violated the Fourteenth Amendment in denying free lunches on the arbitrary basis of the school attended.

Plaintiffs sought partial summary judgment on claims (1), (2) and (3) alone. Plaintiffs' claims (4), (5) and (7), relating to racial discrimination and equal protection under the Fourteenth Amendment, were absent from the motion and are not

* Sitting by designation pursuant to 28 U.S.C. § 293(a).

before us.[1] With concurrence of all counsel, the trial judge stated that the "issue of compliance with the Federal law in respect to school lunches" was "the only issue we are going to try." Defendants' motion to dismiss, segregate or consolidate the Fourteenth Amendment claims were denied. Hence those claims remain for such disposition as the district court may determine on remand.

In a May 10, 1973, memorandum, the district judge stated, inter alia, that the 1970 amendments to the Act and the regulations issued thereunder required that lunches be served to all eligible children within the District. On June 19, 1973, a decree was entered, finding defendants in violation of the Act, ordering service of lunches to all eligible children in the District, and requiring reports of steps taken in compliance and reports of the number of children served. Jurisdiction was retained for such other action as may prove necessary.

The District reported that it had, on June 18, 1973, elected to withdraw from all participation in any program under the Act. Hence no child would be served a free lunch in the approaching school year. Plaintiffs' petition for further relief sought an order upon defendants to continue the present lunch program and to expand it under court supervision as funds might become available.

After review of affidavits, the district court found that the District's decision to terminate participation was based on good faith and was not retaliation against plaintiffs or against the class they represent. Plaintiffs' petition was accordingly denied. In view of defendants' appeal (No. 73–2778) of the June 19th order and plaintiffs' appeal (No. 73–2935) of the denial of the petition,

the district court stayed its June 19th order, substituting an order of August 28, 1973, which enjoined the District from discontinuing the school lunch program as it had theretofore been administered, pending resolution of this appeal. We consider both orders of the district court on this appeal.

Following oral argument and at our request, the United States filed a brief *amicus curiae.* Both parties filed briefs in response to that of *amicus.*

### The Issues

The issues before us are: (1) whether the District's participation in the federal subsidy program under the Act required provision of free lunches to all eligible children within the District, (2) whether the District may be enjoined from terminating its participation in the program and (3) whether an expanded lunch program may be ordered.[2]

### OPINION

This case illustrates the difficulties and delays inherent in piecemeal litigation. That we deal here with the hunger of little children leadens our realization that final determination of the respective rights and duties of the parties, already too long delayed, must await further litigation below.

Though the district court denied defendants' motion to segregate plaintiffs' racial discrimination claims, that result was achieved in effect by its election, with counsels' concurrence, to try only the issue of "compliance with the Federal law in respect to school lunches" and to grant summary judgment on only the first three of plaintiffs' claims. Though plaintiffs' Fourteenth Amendment claims of unequal protection were not

---

1. Plaintiffs' claim (6) alleges a violation which, like those alleged in claims (2) and (3), flows from the basic program limitation complained of in claim (1).

2. Though defendants argue an absence of jurisdiction over the District under the Civil Rights Act, they concede the existence of jurisdiction, under 28 U.S.C. § 1337, of plaintiffs'

claims relating to the National School Lunch Act, which is sufficient herein.

We have considered, and find without merit, defendants' contentions regarding the district court's failure to dismiss the individual defendants and its refusal to deny standing to the plaintiff associations.

tried below and are merely lurking in the wings, we find the briefs replete with reference thereto.[3]

We have not been aided by arguments which ignore the absence of findings and conclusions on racial discrimination, conflicting cost estimates, fund availability and a number of other fact issues. Candor and fairness preclude appellate reliance, through innuendo and assumption, on "facts" not actually determined below.

### (1) Service to All Eligible Children

The district court declined to follow the view that the Act required service of free lunches only to those eligible children attending "participating schools" ("individual attendance units") as expressed in *Ayala v. District 60 School Board,* 327 F.Supp. 980 (D.Colo.1971) and *Briggs v. Kerrigan,* 307 F.Supp. 295 (D.Mass.1969), *aff'd* 431 F.2d 967 (1st Cir. 1970). Relying on the 1970 Amendments to the Act (Pub.L. 91–248) and portions of their legislative history, the court adopted the view that the Act required service of free lunches to all eligible children within the district, as expressed in *Justice v. Board of Education,* 351 F.Supp. 1252 (S.D.N.Y.1972); *Jones v. Board of Education,* 348 F.Supp. 1269 (N.D.Ohio 1972), *rev'd on other grounds,* 474 F.2d 1232 (6th Cir. 1973); *Davis v. Robinson,* 346 F.Supp. 847 (D.R.I.1972).[4]

■ Before us defendants urge, as they did below, adoption of the interpretation found in *Briggs* and *Ayala.* The major theme of defendants' argument is built upon the continued presence in the Act of references to "schools" and "participating schools." We are told that "the word 'school' means a *place* or institution for teaching and learning" and that the Act operates on the basis of

schools that participate in the lunch program. We are cited to the regulations (7 C.F.R. § 210.2[o] defining a "school" as "an educational unit * * * in a single building or complex of buildings" and to portions of the Act and the regulations which provide: (1) that funds are available for foods to be distributed to "schools participating" (42 U.S.C. § 1755); (2) that commodities may be donated to "schools" (42 U.S.C. § 1758); (3) that funds shall be disbursed to "schools" (42 U.S.C. § 1759a(e)); (4) that federal payments shall be on the basis of lunches served in "schools * * * which participate" (42 U.S.C. § 1753); (5) that application is required of a School Food Authority (see 7 C.F.R. § 210.2(p)) for any "school" in which it desires to operate the program (7 C.F.R. § 210.8(a)); (6) that applications shall include the address of "each school" (7 C.F.R. § 210.8(b)); (7) that selection of "schools" shall accord with certain criteria (7 C.F.R. § 210.8(c)); (8) that lunches shall be provided, "with respect to participating schools" in accord with an approved policy statement (7 C.F.R. § 210.-8(e)); (9) that "schools participating" shall serve lunches to children determined unable to pay (7 C.F.R. § 245.1); and (10) that eligibility standards shall be applicable to "all schools participating" (7 C.F.R. § 245.3). From all this, defendants argue that it was error below to hold that a District providing any lunches under the Act must provide a free lunch to all eligible children, "without regard to the school attended by such children." We are compelled to agree.

■ We say "compelled" because children, not schools, go hungry. Hunger has no regard for the school attended. The District, through its arbitrary selection of schools to "participate," is en-

---

**3.** The trial court's May 10, 1973, memorandum refers to plaintiffs' *allegations* of a "freedom of choice" desegregation plan and a destructive effect thereon of the District's lunch program, but those allegations were not tried and were not found as facts. They cannot be treated as facts on appeal.

**4.** The opinion in *Briggs, supra,* includes a description of the National School Lunch Program. The effect of hunger and malnutrition on a child's ability to learn is described in the commentaries cited in *Justice, supra,* and in the opinion in *Davis, supra.*

abled to determine which of the children under its care may eat and which may not. The District, not any school, controls and operates the lunch program.[5] Though the District joined, and accepted subsidies under the National School Lunch Program, it tailors and conducts the program within its jurisdiction essentially as it sees fit. Having operated the program for years only in secondary schools, it then incorporated a particular six of its forty-nine elementary schools. It serves free lunches regardless of eligibility. It serves lunches at secondary schools having a lower percentage of eligible students than some of its elementary schools at which it serves no lunches. It insisted below that it owes no duty whatever, now or at any time in the future, to serve free lunches to eligible children not presently served. Plaintiffs proposed a modification of the trial court's June 19, 1973, order, saying they would accept an order on the District to expand its lunch program "as and when" funds became available.[6] That proposal contemplated implementation of a newly-available tax override and application by the District for all available state and federal subsidies, with no reduction in existing education programs. Like plaintiffs' earlier proposals for gradual phasing-in of an expanded program, contracting out portions of the program to save capital costs, serving cold but nutritious sandwiches, etc., this "as and when" suggestion was adamantly rejected by the District. Defendants' brief here informs us that their position, against any expansion of any kind, present or future, still stands. We must, however, hold that such a free-wheeling approach by School Food Authorities, undesirable as it may be, is consonant with the intent of the Congress as set forth in the statute.

■ Our first duty, in construing a statute, is to effectuate the express intent of Congress. In so doing, we look first to the literal meaning of the words employed in the statute. *Flora v. United States,* 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958). The fundamental error below lay in reliance on part of the 1970 amendments, quoted partially and out of context, and on sweeping statements of particular legislators which were inconsistent with what Congress actually did. That reliance led in turn to a failure to distinguish between statutory provisions concerning eligibility and those concerning participation.

The district court was led to this quote of the language[7] amending 42 U.S.C. § 1758:

"*Any child* who is a member of a household which has an annual income not above the applicable family size-income level set forth in the income poverty guidelines prescribed by the Secretary (of Agriculture) *shall be served a free lunch.*" (District court's emphasis.)

Section 1758, a "program requirements" section of the Act, must be read in its entirety. Its first sentence begins with "Lunches served by schools participating" in the program and limits the entire section. Accordingly, the 1970 amendatory language becomes operative only in participating schools and requires that all eligible children in "schools participating" shall be served. Language ap-

---

**5.** The discretionary power to establish lunch programs is vested by state statute in the school governing board. Cal.Education Code, §§ 17001, 17002.

**6.** Defendants correctly point out that plaintiff's willingness to compromise is inconsistent with their original position, and with that of the district court, that the Act requires service to all eligible children. That plaintiffs were driven to their "as and when" suggestion by defendants' announced decision to terminate all participation appears to have escaped defendants' notice. In any event, plaintiffs' willing-

ness to compromise should not be held against them and certainly cannot, as defendants would have it do, influence our interpretation of the statute.

**7.** The quoted phrase was a modification of § 1758 inserted by Amendment of 1972 (P.L. 92–433). The *1970* language was:

* * * but, by January 1, 1971, any child who is a member of a household which has an annual income not above the applicable family size income level set forth in the income poverty guidelines shall be served meals free or at reduced cost.

pearing in a statutory provision concerning only schools participating cannot be interpreted as evidencing an intent to require service of free lunches to children in non-participating schools.

Participation under the Act results when local authorities make written application to the State Educational agency for those schools in which program participation is desired by those authorities. 7 C.F.R. § 210.8. The State educational agency, with approval of the Secretary of Agriculture, enters an agreement with eligible schools for which written application has been made and funds are then disbursed for participation. 42 U.S.C. § 1757. We can find nothing in the statute or its underlying history to suggest that if one or more schools within a district participate, all eligible schools in that district must participate.

The 1970 Amendments did not conflict with the conclusion reached in *Briggs,* supra, in 1969. Speaking of the purpose of the bill presented to the House of Representatives, Congressman Perkins, Chairman of the House Committee on Education and Labor, stated:

> The proposal before us today does not launch any bold new initiatives—this part of the job has already been done. What H.R. 515 does essentially is to tidy up some loose ends and authorize some assistance in a long-neglected area—nutrition education and training. (115 Cong.Rec. 7040 (1969)).

The Legislative history of the 1970 Amendments is complicated by floor amendments to pending bills and disagreement between the House and Senate versions, which was finally resolved when the recommendations of a House-Senate conference committee were adopted. A careful reading of the history confirms that Congress recognized that the 1970 Amendments would not compel all schools to participate, despite an abundance of broad statements to the effect that *all* needy children would be fed. In the House Mrs. Griffiths queried:

> Is there any requirement in this bill that if a State provides a school lunch

program for some children that it must also provide a school lunch program for all children?

The answer was "No." (115 Cong.Rec. 7045 (1969)). In the Senate, the following dialogue was recorded in relation to the requirement for a State plan of expanded participation:

> Mr. McGovern. Under the provisions of this amendment, the State would be required to develop a plan, showing how it intends to carry out these provisions and how it intends to carry out the program by the year 1972 and 1973. What we are requiring here is that the report be filed by the State.
>
> Mr. Dole. But is it simply a report saying what the plan may be; it is not a requirement that that school, public or private, participate in the school lunch program. Is that correct?
>
> Mr. McGovern. That is correct. We cannot force it.
>
> Mr. Dole. What happens in 1972 or 1973 if the plan is filed but not complied with? Does the State just file another plan?
>
> Mr. McGovern. The State will not be cut off because of the failure of a district or school to participate. The only condition under which this amendment would deny funds to a State would be if the State failed to file a plan. 116 Cong.Rec. 4410 (1970).

Congressional statements of the laudable desire to "feed all needy children" cannot, unfortunately, be taken at face value when Congressional enactments compel us to hold that those statements were applicable only to all needy children in participating schools. The children intended to be reached by the 1970 Amendments were poignantly described by Senator Mondale:

> Mr. Mondale. Mr. President, one of the most haunting experiences I have had since coming to the Senate was when I went to a grade school lunch period at a school in St. Paul, Minn. I decided to go there to see how a school lunch hour worked, to see how the

children responded, to see what kind of meals were served, and so forth. The meal was a good one; it was balanced and nutritious. But I will never forget as long as I live seeing those children coming through the line. The cost of the lunch was 25 cents per child. They had had a 15-cent lunch the year before, but when the OEO money ran out, they went back to 25 cents. About every fifth child going through the line was unable to pay the 25 cents. Many of them just sat amongst their friends who were eating this fine meal. They would sit there with no meal at all. One pathetic little girl, obviously an impoverished child, had a little, dirty sack she brought with her. I asked her if I could look at it. Inside the sack there were three chocolate cookies which were going to be this child's lunch. That should never happen to any American child.

\*     \*     \*     \*     \*     \*

Such experiences are being repeated throughout this country every day.

Millions of children who are hungry sit amongst their friends at lunchtime. Those who need lunch most, those who need it to learn and to have strong bodies, are not only being denied food, they are also being served a lunch in humiliation as they sit amongst their friends and are denied this basic ingredient required for a healthy and dignified life. I think it is a national scandal. 116 Cong.Rec. 4409 (1970).

It is equally scandalous that whole school populations may be denied access to federally subsidized meals, while children in other schools, some perhaps in more affluent parts of a district, may benefit. The hunger of those children who feel humiliation and frustration in participating schools is identical with that felt by needy children in non-participating schools. We cannot, of course, re-write the statute or the regulations which control the school lunch program.

The court below quoted from regulations §§ 245.6(b),[8] 245.3(c),[9] and 245.4.[10] The court then erroneously concluded, in harmony with *Justice* and *Davis,* that

8. 7 C.F.R. § 245.6(b)(1970):

> (b) When the information furnished by a family in its application indicates that the family meets the eligibility standards for either a free or reduced-price lunch, the children from such a family shall be provided the free or reduced price lunch to which such information indicates they are entitled. *If a child transfers from one school to another school under the jurisdiction of the same school-food authority, his eligibility for a free or reduced-price lunch, if previously established, shall be transferred to, and honored by, the receiving school.* If the school-food authority subsequently wishes to challenge the correctness of the information contained in an application, it shall do so under the hearing procedure established under § 245.7. During the pendency of any such challenge, the children of the family shall *continue to receive the free or reduced-price lunch to which they are entitled based on the information contained in the application.* (District court quotation emphasized.)

9. Although the district court identified the quotation as being from 7 C.F.R. § 245.3(c), the quoted language is found in 7 C.F.R. § 245.3(a)(1970):

> (a) Each school food authority shall serve lunches free or at a reduced price to all children whom it determines, in accordance with the requirements of this part, are unable to pay the full price of the lunch. The criteria used by the school food authority in making such determinations shall be included in standards of eligibility which shall be approved by the State agency, or FNSRO where applicable, as part of the policy statement required under § 245.10, and shall be publicly announced in accordance with the provisions of § 245.5. Such standards shall specify the specific criteria to be used, respectively, for free lunches and for reduced price lunches; they shall be applicable to all schools under the jurisdiction of the school food authority; and they shall provide that *all children from a family meeting the eligibility standards and attending any school under the jurisdiction of the school food authority shall be provided the same benefits.* (District court quotation emphasized.)

10. 7 C.F.R. § 245.4 (1970):

> In providing free or reduced price lunches to children meeting the eligibility standards for such lunches, school food authorities shall give first priority to providing free lunches to the neediest children in the schools under their jurisdiction.

those sections, read with the legislative history of the 1970 Amendments, require that all needy children in the district be afforded a free lunch without regard to the school attended. The purpose of regulations Part 245, entitled "Determining Eligibility for Free and Reduced Price Lunches," was to implement § 1758 of the Act. Regulation § 245.1, "General Purpose and Scope," summarizes the requirements of 42 U.S.C. § 1758 and expressly acknowledges that those requirements are imposed only on "schools participating in the national school lunch program." 35 Fed.Reg. 14065 (1970). As indicated above, participation is not mandatory and is determined under Act § 1757 and regulations Part 210.

Subsequent amendments to regulations Part 245 confirm the applicability of the Part to participating schools alone. Of the three regulation sections quoted by the court below, § 245.4 has been cancelled; remaining §§ 245.6(b) and 245.3 have been modified by an express recitation that the sections are operative only with respect to participating schools. Amicus informs us that the Department of Agriculture has consistently interpreted the regulations and the 1970 Amendments as applying only to schools participating in the program. Thus modification of Part 245 since 1970 has been clarifying in nature, without change in substance.

We find therefore that the district court erred in holding the District's administration of the program violative of the Act.

## (2) Election to Terminate

■ Because the Act does not require the District to operate the program district-wide, the record would indicate that the District's announced election to terminate the entire program will be withdrawn.[11] But, as counsel for both parties and Amicus agree, and as the Act makes plain, participation in the National School Lunch Program is purely voluntary. See also Shaw v. Governing Board of the Modesto City School District, 310 F.Supp. 1282 (E.D.Cal.1970) and Davis, supra. Contra, Jones, supra. No segment of the law itself makes participation voluntary under some circumstances and involuntary under others. Congress offered subsidies to encourage voluntary participation.[12]

■ As the case now stands, defendants' June 18, 1973, election to terminate all participation in the National School Lunch Program was a decision political in nature. The individual defendants herein, not the courts, were elected and empowered to make precisely such decisions. If defendants ultimately and lawfully adopt what may be perceived as an inhumanly callous position, the matter is one for correction by the voters of the district, not for us.[13]

In considering plaintiff's petition, the district court reviewed deposition evi-

11. The District's Superintendent advised the district court that it would have continued to administer its school lunch program as it had in the past, if permitted by law.

12. Whether a mandatory free lunch program would be constitutional is not before us. The legislative scheme here involved is not uncommon and has been consistently employed in the field of education. As was once said, "There ain't no free lunch." School lunches, like school buildings, textbooks and teachers, must be paid for. Congress observed the need to feed hungry children at school and the failure of local authorities to meet that need. Recognizing, also, an absence of authority over local schools, Congress merely removed part of the excuse of local authorities by offering to subsidize those who agreed to join.

13. The record reflects the frustration of the California Department of Education in dealing with the defendant District. Deposition testimony indicates that though some 250 California districts participate partially or not at all, the defendant District is the only one of the twenty-five largest California districts that does not provide lunch benefits to all eligible children and that most of California's eight hundred participating districts provide complete lunch programs under the Act. Plaintiffs cite the substantially immediate conversion to complete lunch programs, upon the onset of litigation, in six districts in other states. In the present status of the case before us we are limited to an expression of the hope for a similar outcome herein.

dence and, apparently disregarding the presence of factual issues, devined the District's motivation in electing to terminate and rendered judgment accordingly.[14] Its refusal to enjoin termination, on the premise of the District's "good faith," implies that a contrary finding would have resulted in an injunction. As we have indicated such an injunction could not stand, on this record, against the clearly voluntary nature of the statute. Thus the district court was right, but for the wrong reason, in denying plaintiffs' petition for an order prohibiting termination. We recognize the danger inherent in the termination alternative, and appreciate plaintiffs' frustration when confronted with it, but we cannot deny its availability under the law to school districts not found in violation of constitutional rights.

Though plaintiffs admit that participation is non-mandatory, they nonetheless seek to prohibit the District's termination, citing numerous cases in which courts have required school authorities and other local public bodies to take specific, affirmative action. Those cases, however, involved denial of a constitutional right and the action ordered was deemed necessary to the assured exercise of that right. The trial court neither considered nor adjudicated any constitutional right herein. As indicated, plaintiffs' unquestionable constitutional right to equal treatment, free of racial discrimination, awaits initial consideration by the trial court.

We express no views on plaintiffs' Fourteenth Amendment claims. The district court, on remand, may or may not find the District's operation of its school lunch program to have been designed and employed to achieve or maintain racial discrimination in its schools. The district court may also determine that an overriding financial or other state interest in termination does or does not exist. Under appropriate circumstances, the court may, or may not, find that total termination of participation in the National School Lunch Program would have such a chilling effect on efforts to rectify a determined course of racial discrimination as to justify an injunction against termination and an order upon the District to serve every eligible child under its care. If plaintiffs' allegations be sustained, and the District be found to have trafficked in the hunger of children as a tool to achieve a purpose at war with the constitutional prohibition against racial segregation, then room may exist for such a decree. Though total termination would obviously end discrimination, the district court may find, under all the circumstances, that that option is no longer available. *Griffin v. County School Board of Prince Edward County,* 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964); *Plaquemines Parish School Board v. United States,* 415 F.2d 817 (5th Cir. 1969).

■ To permit total termination at this juncture may be to frustrate the trial court's opportunity to do substantial justice herein. Even if participation were subsequently reinstituted, it would be impossible to fill retroactively the stomachs of those children now being served but who would have had their lunches withdrawn during the interim. To afford the trial court an opportunity to take such action, if any, as may be appropriate, we continue, until further order of the trial court, so much of the trial court's order of August 28, 1973, as

14. Plaintiffs vigorously contend before us that defendants' compliance cost estimates are untrue. The testimony cited by defendants reflects estimates some ten times those in the testimony cited by plaintiffs. Though the record is entirely documentary, we are not favored by findings of fact on these wide conflicts and will not attempt determination of these fact issues *de novo.* Contrary to defendants' bald assertion, the district court did not find their cost estimates "bona fide." The entire argument over costs was directed below to justification of the District's termination decision. Because we hold that the District had a right to terminate, absent violation of constitutional rights, the issue of justification does not here exist. That issue may arise if, on remand, plaintiffs continue pursuit of their Fourteenth Amendment claims.

enjoined defendants from discontinuing the school lunch program as it had theretofore been administered by defendants.[15]

### (3) Expansion Program

■ Amicus, with whom neither party agrees, says nothing whatever about the right to terminate but suggests a mandatory, court-supervised expansion program and recommends a remand for district court review of required good faith expansion efforts by the District. We cannot agree. No authority is cited for a court-required expansion program. Courts are ill-suited and ill-equipped to choose from among a variety of feeding methods, to set priorities, to exercise the fiscal authority, or to make the budgetary judgments, involved in such expansion programs. Nor do already over-burdened judges have the time properly to monitor the details of such programs. Except as last-resort refuges for the protection of constitutional rights, courts should not attempt to function as super school boards and should not attempt the exercise of the administrative powers of executive branch officials such as those of the Secretary of Agriculture herein.[16] *Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554, reh. den. 403 U.S. 912, 91 S.Ct. 2200, 2201, 29 L.Ed.2d 689 (1971); *Deal v. Cincinnati Board of Education,* 419 F.2d 1387 (6th Cir. 1969).

■ Ignoring the recorded absolute refusal of the District to recognize any duty whatever to expand, *Amicus* recommends district court determination of whether the District is working in "good faith" to expand. Citing only 42 U.S.C. § 1759(h)(i), redesignated in 1973 as 1759a(e)(1), which requires *State* educational agencies to furnish an expansion plan, *Amicus* implies a "correlative obligation" here. Defendants point to the fact that California does not require a lunch program, and that it is unlikely to do so because, under state law, the state would then have to pay the full cost. We find no authority for imposing the obligations of state educational agencies under § 1759a(e)(1) on local school districts. Congress could, and perhaps it should, provide for local school district expansion plans, approved by the Secretary, but it is Congress, not we, who must make that legislative judgment.[17] Accordingly, the district court's denial of plaintiffs' petition for court ordered expansion of the District's lunch program must be affirmed.

### Summary

The National School Lunch Act does not require that free or reduced price lunches be provided every eligible child within a district. The Act requires only that every eligible child attending a school participating under the Act be

15. If, of course, the District's program has been expanded to any extent since June 19, 1973, or is expanded at any time during pendency of this litigation, our order is for maintenance of such expanded operation.

16. The parties' arguments respecting the effect of the Eleventh Amendment on our power to order expanded participation are inappropriate to consideration of an Act clearly making participation or non-participation a matter within the discretion of the District. Our refusal permanently to forbid termination or to order expanded participation, on the record before us, has no relation to our equity powers, but is based on the voluntary nature of the statute itself.

17. After a quarter century of its existence, during which modern methods of economical mass feeding have been developed, the National School Lunch Program may be said to have matured beyond the need for requiring "expansion" programs. We are favored by *Ami-* cus with citation of numerous articles and with the pamphlet, "What's So Hard About Feeding Kids?" (FNS–68, USDA), all of which indicate at least the probability that all eligible children in the defendant District could be fed with comparative ease. The practicalities of feeding more children, however, are not at issue in the case as it presently stands.

The District herein indicated that its lunch program was established at schools having facilities for serving lunch. Senator Dole made it clear that the 1970 Amendments were intended to remove "facilities" as a determinant: * * * presently many of the schools that need the school nutrition programs the most cannot afford the kitchen and serving equipment necessary to qualify for the program. This bill will make it possible for professional catering firms to rent the equipment to a school or even prepare and serve the meals on a contract basis. 116 Cong. Rec. 13608 (1970).

provided a free or reduced price lunch. The judgment that the District's school lunch program herein violates the Act is reversed. The denial of plaintiff's petition for court ordered expansion of the District's lunch program is affirmed. The cause is remanded to the district court for adjudication of plaintiffs' Fourteenth Amendment claims. The decree enjoining defendants against termination of the District's limited participation in the National School Lunch Program as presently administered is affirmed, pending final adjudication of plaintiffs' claims under the Fourteenth Amendment.