**Shara AYALA et al., Plaintiffs,**

v.

**The DISTRICT 60 SCHOOL BOARD OF PUEBLO, COLORADO, et al.,**
**Defendants.**

**Civ. A. C-2067.**

United States District Court,
D. Colorado.

April 19, 1971.

Ronald F. Pollack, Center on Social Welfare Policy & Law, New York City, Albert G. Davis, Russell Eprecht, Milton Silverman, Pueblo County Legal Services, Pueblo, Colo., for plaintiffs.

Preston, Altman & Parlapiano, Pueblo, Colo., for District 60 School Board and Members.

Duke W. Dunbar, Atty. Gen., John P. Moore, Deputy Atty. Gen., Robert L. Hoecker, Asst. Atty. Gen., Denver, Colo., for state defendants.

## MEMORANDUM OPINION AND ORDER

ARRAJ, Chief Judge.

Plaintiffs are students at numerous elementary schools in Pueblo, Colorado, which do not have school lunch programs. They are also children of Pueblo residents who are either on welfare or have very limited means. Plaintiffs complain, on behalf of themselves and all others similarly situated, that defendant officials have acted arbitrarily and irrationally in selecting which Pueblo schools will offer lunches and also have failed to give priority to, or at least treat equally, those pupils who have the greatest need for lunches. It is claimed that defendants' conduct violates plaintiffs' rights secured by the National School Lunch Act and the equal protection clause of the fourteenth amendment. Plaintiffs seek declaratory and injunctive relief.

Defendants have moved to dismiss the complaint on the grounds that this court lacks jurisdiction over the subject matter and that plaintiffs' complaint fails to state a claim upon which relief can be granted.

### I.

Plaintiffs contend that the following federal statutes give us jurisdiction over the subject matter of this action: 28 U.S.C. § 1343 (1964) and 42 U.S.C. § 1983 (1964), 28 U.S.C. § 1331 (1964), 28 U.S.C. § 1337 (1964) and section 10 of the Administrative Procedure Act. 5 U.S.C. § 702 (1964). We find it unnecessary to consider all of these statutes since we have concluded that this court does have jurisdiction pursuant to 28 U.S.C. § 1343 (1964) and 42 U.S.C. § 1983 (1964). Section 1983 provides that any person

who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof, to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding.

Section 1343 confers upon federal district courts original jurisdiction of civil actions:

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

██ Since plaintiffs in this action claim that their right to equal protection of the laws has been denied by Colorado officials, acting in their capacities as officials, this court clearly has jurisdiction to hear the constitutional claim and, should plaintiffs be successful, to grant the relief sought. It makes no difference that plaintiffs have not cited a state or local law upon which defendants' conduct may be based. It is set-

tled that the phrase "under color of" comprehends all official behavior, even that which is patently unlawful under state, as well as federal, law. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L. Ed.2d 492 (1961). Furthermore, when the relief sought is an injunction rather than damages, the word "person" in section 1983 has been construed in this circuit and district to include municipalities, Dailey v. City of Lawton, 425 F.2d 1037 (10th Cir. 1970), and school boards. School District No. 1 v. Denver Classroom Teachers Association, CA C–1393 (D.Colo., June 3, 1970).

■ As for plaintiffs' claim based upon the National School Lunch Act, this court has jurisdiction to hear a statutory claim pendant to a constitutional claim, see Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), and perhaps original jurisdiction of the statutory claim as a federal law within the meaning of section 1983. See City of Greenwood, Miss. v. Peacock, 384 U.S. 808, 829–830, 86 S.Ct. 1800, 16 L. Ed.2d 944 (1966); Gomez v. Florida State Employment Service, 417 F.2d 569, 579 (5th Cir. 1969).

## II.

We will consider plaintiffs' statutory claim first. King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). Since the issues before us arise on a motion to dismiss, we must accept as true all of plaintiffs' well-pleaded allegations. From plaintiffs' complaint and briefs we gather the following story:

Colorado participates in the National School Lunch Program, which Congress established in the National School Lunch Act of 1946, 42 U.S.C. § 1751 et seq. (1964). The state receives from the federal government matching funds which the Colorado Board of Education must disburse in accordance with the federal act and with the terms of a contract between the state and the Department of Agriculture. In Colorado local school boards share a responsibility for the character of the program because they select the schools which are to participate in the lunch program.

Twenty of the 41 Pueblo public schools have lunch programs. All of the schools with cafeterias provide lunches. In addition, food prepared in some of the schools with cafeterias is taken by truck to some of the schools without kitchens. This method of food distribution is called the satellite system. Plaintiffs claim that, as a consequence of the method which Pueblo officials use to select schools for participation in the program, children in affluent neighborhoods generally receive lunches while children in poorer neighborhoods do not. It is claimed that defendants' method of selection violates the National School Lunch Act in two respects: (1) priority is not given to those schools whose children are most in need of lunches; (2) even if the act imposes no priority requirement, defendants' method of selection is arbitrary and irrational and fails to take "need and attendance" into account.

■ Plaintiffs' priority argument is based almost entirely upon the language of 42 U.S.C. § 1757 (1964), which provides in pertinent part:

Funds paid to any State during any fiscal year pursuant to section 1753 or 1754 of this title shall be disbursed by the State educational agency, in accordance with such agreements as may be entered into by the State agency and the schools in the State, to those schools in the State which the State educational agency, *taking into account need and attendance*, determines are eligible to participate in the school-lunch program. (Emphasis added.)

We are unable to agree that the phrase "taking into account need and attendance" plainly requires that states give priority to schools whose children are generally most in need of lunches. The words do not say that. However, just what they do mean is not entirely clear, and therefore we have examined other

provisions of the National School Lunch Act and its legislative history to determine what duties, if any, Congress may have intended to impose upon the states in their selection of schools to participate in state lunch programs.

The National School Lunch Act makes financial assistance available to states for "the establishment, maintenance, operation and expansion of nonprofit school-lunch programs." 42 U.S.C. § 1751 (1964). States desirous of participating contract with the Secretary of Agriculture to receive assistance on terms not inconsistent with the act. *Id.* § 1756. Since 1955, states have been required, with some exceptions, to spend $3 on lunch programs for every $1 which the federal government contributes. *Id.* The federal government contributes primarily agricultural commodities and other food, *id.* §§ 1755–56; some money is also available for "non-food assistance," which includes funds for establishing, maintaining and expanding school lunch programs. *Id.* § 1754. The maximum amount which any state may receive from the federal government is figured by using an apportionment formula based on the per capita wealth of the state and on the number of school lunches which the state provides. *Id.* § 1753.

Lunches served by schools participating in the program must meet nutritional requirements set by the Secretary of Agriculture. *Id.* § 1758. In addition, such meals must be served without cost or at a reduced cost to children who, in the judgment of local authorities, are unable to pay the full cost of the lunch. *Id.* The act further provides that states may use federal funds only to reimburse local schools which have served lunches in accordance with the program requirements. *Id.* § 1757.

In its declaration of policy, Congress states that the National School Lunch Act is designed to serve two purposes: "safeguard the health and well-being of the Nation's children and * * * encourage the domestic consumption of nutritious agricultural commodities and

other food * * *." *Id.* § 1751. The legislative history of the act indicates that by encouraging consumption of agricultural commodities Congress intended to benefit farmers and the economy as a whole:

> In this latter objective the committee has in mind not only the maintenance of the present high level of production but the important consideration of a ready and socially desirable means of disposing of irregularly occurring commodity surpluses, a characteristic of agricultural production, which, if left uncontrolled on the market, disrupt (*sic*) the market and seriously injure the ordinary economic processes of pricing and distribution. HR 684, 79th Cong., 1st Sess. 2 (June 5, 1945).

Clearly this purpose would be served by encouraging school lunch programs in general, but not necessarily by requiring that states give priority to needy children. Indeed, requiring that states feed needy children first might tend to reduce the potential market for agricultural commodities, since the states would have to spend more of their money purchasing lunches for children who could not afford them.

As for Congress' intention to safeguard the health of the country's children, the legislative history suggests that Congress had in mind all children, not just those from needy families:

> The experience of the Department of Agriculture in operating school-lunch programs provides a basis for judging the utility of the proposed legislation in accomplishing these objectives. As to the aspect of children's welfare, all surveys point to the need for better nutrition for the nation's children, and the effective manner in which the school-lunch program meets this need. State surveys, conducted under controlled conditions, have shown, as indicated in Appendix A, measurable benefit to the children when an adequate lunch is provided at school, not only in their physical development but in their educational progress. This im-

provement takes place on all income levels, inasmuch as an adequate lunch at school or adequate nutrition is not necessarily assured by the higher income of the parents or the rise in the national income as a whole. The increase of working mothers, consolidation of schools, greater travel time to schools, and rising scale of food costs, together with fixed incomes for many large groups, make the school-lunch program, in which those who can pay are permitted to pay and those who cannot pay need not pay, the appropriate answer. It should be remembered that a child may be malnourished, yet not hungry. HR 684, 79th Cong., 1st Sess. 5 (June 5, 1945).

A Senate report on the proposed bill noted three reasons for lack of adequate nutrition in the diets of the nation's school children. Only one of these reasons was lack of economic means. The other two, which apply to all children, were lack of knowledge about nutrition and the difficulty of obtaining proper lunches at school. SR 553, 79th Cong., 1st Sess. 9 (July 28, 1945).

In 1962 a Senate subcommittee expressed its concern about the fact that many schools with needy children did not participate in lunch programs. SR 2016, 1962 U.S.Code Cong. & Adm. News 3244. Congressional awareness of the problem suggests that those senators who studied the matter did not regard the National School Lunch Act as establishing a priority for needy children:

An additional amendment was proposed in subcommittee by Senator Hart, which would have authorized an experimental 3-year program to extend the school lunch program to schools in urban areas which, because of inadequate facilities, are currently unable to participate fully in the program. The subcommittee recommended instead that the Secretary of Agriculture be requested to study the situation with regard to the participation of such schools in the school lunch program because of inadequate facilities with a view to developing methods of making participation in the program available to these schools, and the subcommittee concurs in that recommendation. *Id.* at 3255.

Against this evidence that Congress did not intend to establish a priority for needy children, plaintiffs offer excerpts from speeches about the National School Lunch Program. Perhaps the strongest statement in support of plaintiffs' position came from Congressman Voorhis:

[U]nder the school lunch program, such as this bill contemplates, it will be possible to encourage the inauguration of school lunch programs by local people in the places where they are most needed, and in places where they. have been least in evidence * * *. We would be glad, indeed, if, as the formula in this bill provides, the food could be gotten into lunches for those school children of this nation who need it most, no matter where they may be found. 79 Cong.Rec. 1471 (Feb. 19, 1946).

This statement certainly says that Congressman Voorhis approved of the bill's apportionment formula, which has the effect of providing more funds to states with less per capita income, but encouraging the inauguration of lunch programs is a far cry from requiring that states give a priority to economically needy children. Indeed, plaintiff has not referred to a single statement in which the priority theory is clearly set forth. We cannot believe that a provision of such importance would go unmentioned in the legislative history and would be expressed in the modest "need and attendance" language which appears in the act. Therefore, we conclude that the act does not establish the priority for which plaintiffs contend. We note that this judgment agrees with that reached by the Massachusetts federal district court in Briggs v. Kerrigan, 307 F.Supp. 295 (D.Mass.1969), aff'd, 431 F.2d 967 (1st Cir. 1970).

While we agree with defendants that the phrase "taking into account

need and attendance" cannot be raised to the level of a claim for priority, we disagree that the phrase should be rendered meaningless by interpreting the act to permit complete freedom in selecting schools for participation in lunch programs. A well-known guide to statutory construction is that effect should be given to all the language in a statute, at least in the absence of contradictory or inconsistent provisions. The "need and attendance" phrase appears to impose the rather modest requirement that states make their selections with need and attendance in mind. The language also suggests that states are free to consider other factors which would make selection on a different basis reasonable. The word "need," as it appears in the act, is used in two senses, the need for nutritious meals, 42 U.S.C. § 1758 (1964), and economic need. *Id.* § 1753. It seems clear from the above quoted legislative history that Congress meant to emphasize the former, but not necessarily to the exclusion of the latter. "Attendance," we think, refers to the number of children who would benefit from a lunch program.

This interpretation of section 1757 is not, so far as we can discover, inconsistent with other provisions of the act or with its legislative history, which contains but two references to the disputed phrase. In one report a House committee commented that state agencies determine the eligibility of schools to participate in lunch programs, and in another sentence the same committee adds that states are to make selections taking need and attendance into account. HR 684, 79th Cong., 1st Sess. 5 (June 5, 1945).

Thus, we believe, plaintiffs' claim that Pueblo school officials have acted arbitrarily and have failed to take need and attendance into account in selecting schools to participate in the Pueblo school lunch program does state a violation of the National School Lunch Act. As we have already indicated, school officials may not ignore considerations of need and attendance unless they have a reasonable basis for so doing.

### III.

Plaintiffs also argue that defendants' allegedly arbitrary and irrational conduct violates the equal protection clause of the fourteenth amendment. *Cf.* Dandridge v. Williams, 397 U.S. 471, 90 S. Ct. 1153, 25 L.Ed.2d 491 (1970). Since we have ruled that arbitrary and irrational conduct would violate the National School Lunch Act, we find it unnecessary to reach this question. The Supreme Court has expressed a preference for avoiding decisions on constitutional grounds when the same facts state a violation of a federal statute. King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

However, plaintiffs have raised a second equal protection argument which poses a difficulty. They claim that their right to receive school lunches is a part of the right to life itself and thus a special or fundamental interest of a magnitude equal to, or greater than, the right to vote, Harper v. Virginia State Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966), or the right to appeal from a criminal conviction. Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). They assert that because a fundamental interest is at stake defendants must have a compelling or overriding, rather than merely rational, interest in excluding plaintiffs and others similarly situated from school lunch programs.

We believe it would be inappropriate for us to decide this difficult question on a motion to dismiss, since the facts of the case as they are developed may make it unnecessary to decide the question at all. If we were to conclude at a later stage in this litigation that defendants' conduct has been arbitrary and irrational, we would then be required to hold that the state education agency may not disburse federal funds until a program has been devised which meets the requirements of the act. Given such a holding, school officials would have open to them at least two courses of conduct which would render unnecessary and advisory any decision of ours concerning

whether a fundamental interest is at stake: they could extend the present program, or a limited version of it, to all public schools or they could abolish lunch programs altogether.

Of course, plaintiffs may fail to meet their burden of proof or facts may be developed which show that defendants' conduct has been reasonable. If such should be the case, we would be required to decide the fundamental interest claim in this litigation. Nevertheless, we can, without prejudicing the interests of either group of parties, abstain from ruling until this case has proceeded to the summary judgment or trial stage and we find it necessary to dispose of the question.

For the foregoing reasons it is

Ordered that defendants' motion to dismiss the instant action be and the same hereby is denied.